HENRY SEIBERT *vs.* MINNEAPOLIS & ST. LOUIS RY. Co. *et al.*

Argued January 11, 1894. Reversed Feb. 5, 1894.

No. 8553.

**Costs and expenses of protecting a trust estate may be allowed the cestui que trust.**

Where individual bondholders under a railway trust deed have been permitted to appear in an action for the purpose of protecting the interests of all the bondholders under the trust deed, and they incur expenses therein for that purpose, for which, if made by the trustee, he would be entitled to reimbursement out of the trust fund, the court has the power to make the same reimbursement to such bondholders that it might have made to the trustee had he made the disbursements for the same purpose.

**Refusal to exercise a vested discretion is reversible error.**

If relief lying within the sound discretion of the court is refused on the ground of the want of power to grant it, such decision is erroneous, and should be reversed, and the case remanded, with directions to the court to exercise its discretion.

Appeal by Robert Benson and more than fifty others, defendants, from an order of the District Court of Hennepin County, *Seagrave Smith,* J., made August 29, 1893, denying their application for counsel fees, costs and disbursements.

The Minneapolis & St. Louis Railway Company on October 12, 1882, made its mortgage or deed of trust to the Central Trust Company of New York upon all its railway lines and property to secure the payment of four thousand bonds of $1,000 each, but it was subject to several prior mortgages. This was called the Improvement and Equipment mortgage. One of these prior mortgages was made June 1, 1881, to said Central Trust Company, upon the branch of its railway known as the Pacific Extension, to secure the payment of six thousand bonds of $1,000 each. Henry Seibert was appointed trustee in the Improvement and Equipment mortgage in place of the Central Trust Company pursuant to certain provisions in the mortgage. He brought this action June 28, 1888, to foreclose this junior mortgage and on the same day William H. Truesdale was appointed receiver and took possession of the entire property. He was required to manage and operate the railway, keep accounts, pay from the receipts the necessary expenses and hold the balance subject to the order of the court.

Robert Benson and over fifty others, holders of six hundred and ninety-one of the Pacific Extension bonds, applied September 14, 1889, and were admitted defendants in the action, and thereafter they took an active part in the determination of numerous questions which arose in the administration of the trust and the conduct of the foreclosure suit, resulting in great benefit to all the holders of the Pacific Extension bonds. On December 10, 1892, Benson and his associates applied to the court on petition and the files and records in the action for an order directing the receiver to pay them or their attorneys out of the earnings in his hands $15,000 for and on account of their attorneys fees, costs and disbursements in the action. The court commended the efforts of the applicants but denied the application solely on the ground that in its opinion it had no authority to order the payment. The order stated the pertinent facts substantially as above recited. From the order denying this application Benson and his associates appeal.

*Lusk, Bunn & Hadley* and *Flandreau, Squires & Cutcheon*, for appellants.

The District Court had discretion to grant the application of appellants for reimbursement of their expense incurred in this action.

The record shows distinctly that the District Court refused to exercise any discretion, holding that it possessed none, that it denied appellants' application for alleged want of power to grant it. If relief, lying within the sound discretion of the trial court be refused upon any ground that proves the non exercise of that discretion, such decision will be reversed upon review and the case remanded with a direction to exercise the discretion. *In re Harmony F. & M. Ins. Co.*, 45 N. Y. 310; *In re Attorney General* v. *North Am. Life Ins. Co.*, 91 N. Y. 57.

The application was for indemnification (virtually costs between solicitor and client) out of a fund in the control of a court of chancery. The court in proper cases has power to award such costs. *Attorney General* v. *North Am. Life Ins. Co.*, 91 N. Y. 57; *Trustees* v. *Greenough*, 105 U. S. 527.

It certainly was necessary that the scattered bondholders claiming under the Pacific Extension mortgage should have some representation in this action which should be efficient and entitled to their confidence. If the trustees could not properly or would not in fact act for them in all matters and if they could not substitute for it some other person or corporation as trustee, it was competent for any of the bondholders to assume the representation, that is to say a *de facto* trusteeship.

The Central Trust Company was virtually incapacitated to act as trustee under the Pacific Extension mortgage. If not so incapacitated in law it was in conscience, and it very properly recognized the fact. It was the trustee named in five mortgages, each a lien upon the whole or a part of the lines of the Minneapolis & St. Louis Railway Company. One of these mortgages was a junior lien upon the Pacific Extension. Three at least were not liens upon that division at all. Some of the portions thus mortgaged were income earning. Some were not. Manifestly it was for the interest of the bondholders under each mortgage that the division upon which their mortgage was a lien should be charged with a portion as small as possible of the expense of operating the railway, and credited with a portion as large as possible of the gross earnings of the road. A trustee under a mortgage or trust deed is entitled to be indemnified against loss by reason of costs or charges incurred in executing his

trust. *Dodge* v. *Tulleys,* 144 U. S. 451; *Rensselaer & S. R. Co.* v. *Miller,* 47 Vt. 146.

It is fully established that if one or more of many parties having a common interest in a trust fund take proper measures to prevent its diversion from the purposes to which it should be applied, or to restore it to those purposes, he or they, as the case may be, may be reimbursed by a court of equity out of the fund in its hands, the reasonable expense of so doing. *Trustees* v. *Greenough,* 105 U. S. 527; *Central R. & B. Co.* v. *Pettus,* 113 U. S. 116; *Adams* v. *Kehlor Milling Co.,* 38 Fed. Rep. 281; *Attorney General* v. *Brewers' Co.,* 1 P. W. 375; *Sutton* v. *Doggett,* 3 Beav. 9; *Larkins* v. *Paxton,* 2 Myl. & K. 320; *Attorney General* v. *Skinners' Co.,* Jac. 629; *Tootal* v. *Spicer,* 4 Sim. 510; *Attorney General* v. *Old South Society,* 13 Allen 474; *Barnes* v. *Newcomb,* 89 N. Y. 108; *Mason* v. *Codwise,* 6 John. Ch. 297.

*John M. Shaw* and *T. S. Wright,* for respondent Seibert.

*Albert E. Clarke* and *Isham, Lincoln & Beale,* for respondent, Minneapolis & St. Louis Railway Co.

No contract, express or implied, supports the claim of appellants and without contract there can be no obligation. Where on the foreclosure of a mortgage the court has taken the mortgaged property into its own custody, claims for allowance out of that estate, whether to the trustee's counsel or to any other party, must primarily be based upon some contract express or implied with the mortgagor if he is to be charged with the allowance. A party who has simply acted in the collection of a debt due to himself or to his client has no claim to compensation for his services from the debtor nor from a general fund belonging to all creditors and the debtor. A distinct principle and a distinct rule govern the case of what are known as services to the fund itself, beneficial to the fund and to all parties interested in it. Where one by his services has increased the common estate, has benefited it by rescuing property which was lost or saved it from waste and destruction, he is allowed compensation from the fund so that all who receive and accept the benefit of his services may bear their relative proportion of the expense. Such costs, how-

ever, ought not to be allowed out of the general estate, but should be charged upon the particular property recovered. *Adams v. Kehlor Milling Co.*, 38 Fed. Rep. 281; *Attorney General* v. *Brewers' Company*, 1 P. W. 376; *Attorney General* v. *Kerr*, 4 Beav. 297; *Attorney General* v. *Old South Society*, 13 Allen 474.

Even in such cases the element of contract always underlies any allowance that may be made; and services that are purely voluntary or merely incidental create no equity with which the general fund may be charged. The services must not only be beneficial to the fund and to all persons interested in it including the mortgagor if there be a surplus belonging to him, but they must have been rendered under such circumstances that a contract for compensation by the mortgagor may justly be implied from his acceptance of them. Any right to counsel fees must absolutely be based upon contract. If there be no stipulation in the mortgage for counsel fees, they cannot be recovered. This is wholly a matter of contract. Jones on Mortgages, 1606; *Wylie* v. *Karner*, 54 Wis. 591; *Sichel* v. *Carrillo* 42 Cal. 493; *Stover* v. *Johnnycake*, 9 Kan. 367; *Conwell* v. *McCowan*, 53 Ill. 363; *Thomas* v. *Jones*, 84 Ala. 302; *Hand* v. *Savannah & C. R. Co.*, 21 S. C. 162.

The allowance of the compensation demanded by appellants in their petition is forbidden by the statute of Minnesota. 1878 G. S. ch. 81, § 44. If this is a mortgage covering any lands in this state then this statute seems conclusive upon this appeal. *Hammock* v. *Loan & T. Co.*, 105 U. S. 77.

We understand the rule to be, first, that such costs and allowances will not be allowed to individual bondholders where the trustee is a party and is discharging his duties in the same suit; second, that in no case will such costs and allowances be made both to bondholders and to trustees. *Investment Co.* v. *Ohio & N. W. R. Co.*, 46 Fed. Rep. 696; *Robinson* v. *Alabama & G. Mfg. Co.*, 51 Fed. Rep. 268; *Fowler* v. *Equitable Trust Co.*, 141 U. S. 385; *Matter of Attorney General* v. *North Am. Life Ins. Co.*, 91 N. Y. 57.

MITCHELL, J. The facts are sufficiently stated in the order appealed from. See, also, opinion on a former appeal in the same case. 52 Minn. 246, (53 N. W. 1151.)

·This appeal is from an order denying the application of the bond-holders under "the Pacific Extension" mortgage, who were allowed to appear as defendants in the action for the purpose of protecting the interests of all the bondholders under that mortgage, for an allowance for attorney's fees and other disbursements made by them in connection with the action.

The discussion of counsel has taken a wide range, but, in our judgment, the law of the case lies within a very small compass.

It seems to us clear that the services performed and the disbursements made by these appellants were such that, if performed or made by the trustee, the latter would have been entitled to reimbursement therefor out of the trust fund as services performed and disbursements made in the execution of the trust and in protecting the interests of the bondholders under the mortgage.

It is not material whether or not the action instituted by the plaintiff as trustee under "the equipment" mortgage was authorized under that trust. The fact was that the action had been commenced, and in it not only was relief asked that would, if granted, be prejudicial to the rights of the bondholders under the Pacific Extension mortgage, but a receiver had been appointed, who had, under the order of the court, taken possession of and was operating the property, and collecting the earnings thereof, which were pledged by the Pacific Extension mortgage, which authorized the trustee, in case of default, to take possession of the road, operate and manage its business, collect and receive the tolls, issues, and profits thereof, and apply the net proceeds to the payment of the interest and principal of the bonds.

There can be no question as to the right as well as the duty of the trustee in such a case to defend the action so far as necessary to protect the interests of the bondholders, and to apply to the court to have a receiver hold for and pay to them so much of the net earnings as is covered by his mortgage. *Seibert* v. *Minneapolis & St. L. Ry. Co.*, 52 Minn. 246. And there can be no doubt as to the right of the trustee to reimbursement out of the funds, which is the subject of the trust, for all reasonable expenses incurred in the performance of such duty, as being expended in the execution of the trust, and preserving and administering the fund which is the subject of the trust.

And if, for any reason, the bondholders are permitted to appear in the action for the purpose of protecting the trust property, and do, in whole or in part, what the trustee might have thus done, it seems to us that there can be no doubt of the power of the court, upon a proper showing, to make the same reimbursement to them which it might have made to the trustee had he performed the same services and incurred similar expenses. This does not mean that both should be paid for the same thing, but that, after determining the amount which should be allowed for expenses necessarily or reasonably expended in preserving and protecting the trust property, the court may apportion the amount between the trustee and the bondholders, or award it all to one of them, according to the equities of the case.

In this case the court recognized the equities of the appellants, and the value of their services, in the benefits of which all the other bondholders had shared equally with themselves, but refused to exercise any discretion in the matter, holding that it had no power to grant appellants' application; that is, that it had no authority to allow reimbursements to individual bondholders who appear in a suit of this character. It is elementary that if relief lying within the sound discretion of the trial court is refused on the ground of want of power to grant it, or upon any other ground that proves the nonexercise of that discretion, such decision will be reversed, and the case remanded, with a direction to exercise the discretion. This rule depends upon the right of every suitor to obtain full and fair consideration for all rights that he may properly submit to the decision of the court. The questions whether, in the exercise of a sound discretion, the court ought to make an allowance to appellants, and, if so, how much, are not before us for consideration. The court having refused to exercise its discretion on the ground of a supposed want of power, the order appealed from must be reversed.

(Opinion published 57 N. W. 1068.)