*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1672**

In the Matter of the Massage and Bodywork
License Application of Kim Yi's, LLC,
and Yong Green d/b/a Kim Yi's.

**Filed June 13, 2016
Affirmed
Bjorkman, Judge**

Minneapolis City Council

Randall D. B. Tigue, Randall Tigue Law Office, P.A., Golden Valley, Minnesota (for relators Kim Yi's, LLC and Yong Green d/b/a Kim Yi's)

Susan L. Segal, Minneapolis City Attorney, Joel M. Fussy, Assistant City Attorney, Minneapolis, Minnesota (for respondent City of Minneapolis)

Considered and decided by Bjorkman, Presiding Judge; Rodenberg, Judge; and Bratvold, Judge.

**UNPUBLISHED OPINION**

**BJORKMAN**, Judge

Relators challenge the denial of the application for a massage and bodywork license, arguing that respondent city may not rely on an administrative citation and that the other evidence is insufficient to support the denial. We affirm.

FACTS

Relator Yong Green owns relator Kim Yi's, LLC, a massage business located in Minneapolis. In December 2013, respondent City of Minneapolis adopted chapter 286 of the Minneapolis Code of Ordinances, which requires massage and bodywork establishments to be licensed and comply with a set of regulations. Minneapolis, Minn., Code of Ordinances (MCO) §§ 286.10-.120 (2014). On June 4, 2014, the city notified Kim Yi's of the license requirement and gave the business six months to apply for licensure. Green[1] filed an application on July 8.

On November 4, Minneapolis police conducted an undercover prostitution investigation at Kim Yi's. During the investigation, employee Y.B. exposed her breasts and touched the groin and testicles of an undercover officer during a massage. When other officers attempted to gain entry to arrest Y.B., Green did not allow them into the business for several minutes. The city issued Kim Yi's two administrative citations: the first for Y.B.'s nudity and sexual contact with the officer, and the second for not immediately permitting the officers to enter the business premises.[2]

Green challenged both citations, arguing, among other things, that the officer's conduct of engaging in sexual contact with Y.B. violated her constitutional rights to due process under *State v. Burkland*, 775 N.W.2d 372 (Minn. App. 2009), *review denied* (Minn. Jan. 27, 2010). Following a March 23, 2015 evidentiary hearing, an administrative hearing

---

[1] Green refers to both relator Yong Green and relator Kim Yi's, LLC.

[2] The two citations were based on MCO § 286.100(2)-(4), and MCO § 286.80, respectively.

officer dismissed the citation for not permitting officers to enter the business, but upheld the citation for nudity and sexual contact during the massage. The hearing officer imposed a $200 fine. Green did not appeal and paid the fine.

On February 24, 2015, while Green's challenge to the administrative citations was pending, the Hennepin County Attorney's Office sent Green a Notice of Nuisance, informing her that she was required to abate the prostitution-related activity that came to light during the undercover investigation. On March 18, Green agreed to do background checks of future employees to prevent future prostitution incidents. A follow-up inspection conducted on March 20 revealed that Green hired a new employee the previous day without completing the agreed-upon background check.

On May 4, the city asked Green to submit copies of business records identifying all employees to verify that everyone was at least 18 years of age. The city gave Green until May 11 to respond to the records request, but she did not comply.

On May 12, the city notified Green that it would recommend denial of the license application. The notice listed several reasons for the recommendation, including the citation for nudity and sexual contact, failure to conduct a background check on the new employee, litter on the business premises, and failure to comply with the business-records request. Green appealed the recommendation to the same administrative hearing officer. Green argued that the prostitution incident could not be used as the basis for both imposing an administrative citation and denying the license application.

On July 27, the hearing officer upheld the recommendation to deny the license application. The hearing officer rejected Green's assertion that the city could not deny the

3

license application based on the prostitution incident.  And the hearing officer noted that Green's failure to comply with the background-check procedures and failure to respond to the city's business-records request provided additional grounds to deny the license application.[3]

Separately from the administrative proceedings, Y.B. was charged with engaging in prostitution in a public place in violation of Minn. Stat. § 609.324, subd. 6(1) (2014).  On August 7, 2015, the charge was dismissed after the district court concluded that the undercover officer's outrageous conduct violated Y.B.'s due-process rights.  *See Burkland*, 775 N.W.2d at 376.  Specifically, the district court ruled that the officer's participation in sexual conduct was unnecessary to collect evidence and establish the elements of the prostitution offense.

A city council committee approved the hearing officer's recommendation to deny the license application.  The city council adopted this decision, and the mayor signed the denial order on August 26.  Green appeals by writ of certiorari.

---

[3] The hearing officer also noted that the observations of the inspectors bolstered the conclusion that Kim Yi's should not be issued a license.  Testimony and other evidence from the March 23 citation-appeal hearing established that Kim Yi's is "shabby, rundown and uninviting."  The business has no exterior signage, the primary entrance is in a back alley, and the front door contains a closeable slot for customer communications.  The business operates on a cash-only basis and none of the employees possess certificates from massage schools or associations.  Finally, there are massage tables located in shower rooms, mirrors covering walls and windows, and a cat on the premises to manage a rat problem.

**D E C I S I O N**

"City council action is quasi-judicial and subject to certiorari review if it is the product or result of discretionary investigation, consideration, and evaluation of evidentiary facts." *Staeheli v. City of St. Paul*, 732 N.W.2d 298, 303 (Minn. App. 2007) (quotation omitted). On appeal, we will affirm quasi-judicial determinations "unless they are unconstitutional, outside the agency's jurisdiction, procedurally defective, based on an erroneous legal theory, unsupported by substantial evidence, or arbitrary and capricious." *Cole v. Metro. Council HRA*, 686 N.W.2d 334, 336 (Minn. App. 2004) (quotation omitted).

**I.     The city's denial of Green's license application was not based on an erroneous legal theory.**

**A.     The city did not unlawfully split its cause of action.**

Green first argues that it was unlawful for the city to consider the prostitution incident as a basis for denying the license application because that incident was the subject of a separate administrative proceeding and citation. Green relies on numerous cases that stand for the proposition that res judicata prevents a party from dividing a single cause of action into separate cases involving the same factual circumstances. *See Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn. 1978); *Myhra v. Park*, 193 Minn. 290, 295, 258 N.W. 515, 518 (1935); *Gulbranson v. Gulbranson*, 408 N.W.2d 216, 218 (Minn. App. 1987). Green concedes that the prohibition against splitting causes of action has not been applied to administrative proceedings. But she cites *State ex rel. Friends of the Riverfront v. City of Minneapolis*, 751 N.W.2d 586, 589 (Minn. App. 2008), *review denied* (Minn. Sept. 23,

5

2008), to support her argument that res judicata bars the city from relying on the administrative citation to deny Green's license application. We are not persuaded.

In *Friends of the Riverfront*, a city council approved a high school's request to construct an athletic facility following administrative proceedings. 751 N.W.2d at 588-89. Several of the parties involved in the proceedings subsequently brought an action in district court challenging the proposed construction. *Id*. at 589. The district court dismissed the action. *Id*. This court affirmed, applying collateral estoppel to bar the claims for relief under the Minnesota Environmental Rights Act. *Id*. at 589, 592. We rejected the plaintiffs' arguments that collateral estoppel did not apply because they did not have a full opportunity to be heard in the administrative proceeding and were not in privity with a party to that proceeding. *Id.* at 590.

The present case involves different circumstances. Green applied for a massage and bodywork license on July 8, 2014. Four months later, the city initiated its own, separate proceeding seeking to sanction Green for violating city regulations prohibiting nudity and sexual conduct in massage and bodywork establishments. While the fact that Green's employee violated the nudity and sexual contact regulations was relevant to both proceedings, the issues decided were different. Green sought to obtain a business license. The city requested a determination that Green violated regulations and should be fined. Because the issues were not identical, collateral estoppel does not apply. *See Graham v. Special Sch. Dist. No. 1*, 472 N.W.2d 114, 115-16 (Minn. 1991) (stating collateral estoppel precludes relitigation if the issues are identical).

Moreover, the city did not split its cause of action. This is not a situation where Green already held a massage and bodywork license, and the city initiated one cause of action based on ordinance violations, and a separate cause of action to revoke the license. The city initiated one cause of action—which culminated in the administrative citation that Green did not appeal.

Finally, the MCO contemplates the use of prior regulatory violations as a basis for denying a license application. As the hearing officer pointed out, the MCO provides that "[t]he administrative enforcement and hearing process provided for in this chapter will be *in addition to* any other legal or equitable remedy available to the city for Code violations." MCO § 2.30 (2014) (emphasis added). And a massage-license application may be denied if the applicant has a history of violating ordinances or is found to be violating provisions of chapter 286. MCO § 286.110(1), (7). For these reasons, we reject Green's argument that the city impermissibly split its cause of action.

**B.      Dismissal of the related criminal charge does not preclude the city from considering the underlying facts in the license-application proceeding.**

Green next asserts that the city unlawfully considered the prostitution incident as a basis for denying the license application because the criminal charge against Y.B. was dismissed after the district court held that the undercover officer engaged in outrageous conduct. We disagree.

The city noted that the administrative citation arising out of the prostitution incident was one of the reasons it denied Green's license application. But it is the facts underlying the incident—not the criminal charge itself—that support the administrative citation and

7

denial of Green's license application.  If Green wanted to further challenge the validity of the administrative citation, she had the opportunity to appeal the hearing officer's decision. MCO § 2.110 (2014) (stating that "[a]n aggrieved party may obtain judicial review of the decision of the hearing officer by petitioning the Minnesota Court of Appeals for a writ of certiorari pursuant to Minnesota Statutes, Section 606.01.").  Green chose not to do so. And her assertions that this decision should not be held against her because the appeal costs would exceed the fine and the city would use any failure to timely pay the fine as grounds to deny the license application are unavailing.  Green provides no legal authority that would excuse her failure to appeal the decision.  Because the administrative-citation proceeding was fully and finally adjudicated, the city did not err by considering evidence that Green violated the regulation prohibiting nudity and sexual contact with patrons in the licensing proceeding.

Green next argues that, although she did not appeal the citation, we should reconsider its validity because the law has changed since the administrative hearing.  We disagree.  In upholding the administrative citation, the hearing officer found that the investigating officer did not engage in outrageous conduct under *Burkland*.  Subsequently, a district court in a separate criminal case concluded otherwise.  But the fact that different decision-makers in separate cases reached different legal conclusions does not mean the law has changed.  The district court's decision in the criminal case had no binding impact on the administrative proceedings.

**II.      Sufficient evidence supports the city's denial of the license application.**

As stated above, the undisputed evidence that Green violated the ordinances prohibiting employee nudity and sexual contact with customers provided a sufficient basis for denying the license application.  *See* MCO § 286.110(1), (7) (stating that a license application may be denied if the applicant or licensee has a history of violating ordinances or is found to be violating provisions of chapter 286).  But the uncontested evidence also shows that Green did not respond to a business-license records request pursuant to MCO § 286.80(b) and did not honor her agreement to follow background-check procedures for all new employees.

Green argues that she was prejudiced by the fact that the city did not cite the record-keeping ordinance in its initial submissions to the hearing officer.  We are not persuaded.  The business-license records request sought documents verifying that Kim Yi's employees were at least 18 years of age, in compliance with MCO § 286.100(5), which states that it is unlawful to employ anyone under 18 years of age at a massage establishment.  Although the request did not directly reference the record-keeping ordinance, it informed Green of the ordinance's requirements.  Further, MCO § 259.250(2) (2014) makes it the responsibility of the licensee to operate a business in compliance with the applicable city ordinances.  Accordingly, Green was on notice that she was required to maintain the employment records and provide them to city officials upon request.  On this record, we discern no prejudice.

Green also contends that the record-keeping ordinance is unconstitutional in light of *City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015).[4] But we choose not to reach this issue because there are otherwise sufficient facts that justify denial of the license application. *See In re Senty–Haugen*, 583 N.W.2d 266, 269 n.3 (Minn. 1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise.").

As the hearing officer found, Green did not perform a background check on a new employee required by the nuisance-abatement compliance plan she entered one day earlier. Although the hearing officer did not specify which section of the MCO Green violated, the broad language of MCO § 286.110 contemplates consideration of this evidence in evaluating a license application. *See* MCO § 286.110(1) (stating that "[i]t shall be grounds for denial [of the license] if . . . [t]he applicant or licensee is not complying with or has a history of violations of the laws and ordinances that apply to public health, safety and morals").

In sum, the city did not err by considering the administrative citation arising out of the prostitution incident in the context of Green's license application. And the citation provided a sufficient basis on its own to deny the application. Green's failure to comply with agreed-to employee background checks also supports the city's denial of the

---

[4] Green cites to *City of Los Angeles v. Patel*, 135 S. Ct. 400 (2015), which only grants the petition for writ of certiorari.

10

application.   On this record, we conclude that the city's decision to deny the license application was not arbitrary and capricious.

**Affirmed.**